**FILED**

**April 13, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 11:29 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Jacqueline Keyes, | ) | Docket No. 2016-06-2007 |
| Employee, | ) | |
| v. | ) | |
| Bridgestone Americas, | ) | State File No. 58630-2016 |
| Employer, | ) | |
| And | ) | |
| Old Republic Insurance Company, | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

---

This case came before the undersigned Workers' Compensation Judge on April 12, 2017, on Ms. Keyes' Request for Expedited Hearing. Although Bridgestone initially accepted her claim as compensable, it since denied Ms. Keyes claim, asserting that the medical evidence suggests she did not sustain an injury arising primarily out of and in the course and scope of employment. Notwithstanding Bridgestone's problematic handling of Ms. Keyes' claim thus far, this Court agrees, based on the present record. Therefore, the Court denies her requested relief.

### History of Claim

Ms. Keyes worked at Bridgestone as a production leader. On July 6, 2016, Ms. Keyes slipped in water and fell to the floor at work, injuring her left knee.

Bridgestone accepted the claim and offered a panel. Ms. Keyes chose Dr. Lane Tippens, the onsite physician, but did not see him that day. Instead, she received care in the onsite clinic, where a provider diagnosed "acute pain" and returned Ms. Keyes to full-duty but allowed her to work at a reduced pace. Dr. Tippens did not examine Ms. Keyes until July 25, in a thirty-minute encounter. He diagnosed "left knee pain: Rule out internal mechanism injury," returned her to full duty, and ordered an MRI. Dr. Tippens discussed the MRI results at Ms. Keyes' next visit, notes from which state:

MRI is remarkable for a great deal of OA with cartilage loss, effusion and popliteal cyst. There is also reference to a torn meniscus, age not characterized. I advised Ms [sic] Keyes that most of her problems are chronic and preexisting but that the meniscal tear may be work-associated. We will offer her a panel to address the meniscal injury only.

Bridgestone offered another panel, and Ms. Keyes chose Dr. Michael Reid. Dr. Tippens forwarded copies of his treatment notes to Dr. Reid with a cover letter that states, "MRI results state chronic mild to severe OA, some cartilage loss noted as well."

Ms. Keyes saw Dr. Reid on August 22. Notes from that visit give a history as follows:

Fifty-seven year old female production leader at Bridgestone Tire was at work on 07/06/16. An injury occurred when she twisted her knee while working in an area with water. She states that as she fell her knee twisted resulting in medial joint line pain and tenderness which persisted. Following failure of Improvement [sic] with work restrictions, the patient was referred for an MRI scan. This was performed . . . and indicated advanced osteoarthritis of the medial compartment and patellofemoral joint and what appeared to be a degenerative tear of the medial meniscus. She is now referred for an orthopedic evaluation. Interestingly enough, she says that while at work today her left knee when she bent it and changed directions it caused pain and she fell striking her right knee.

(Ex. 2 at 25.) Dr. Reid examined both knees and ordered and read x-rays. He diagnosed "[c]hronic tear medial meniscus left knee" and "[o]steoarthritis left knee," but made no diagnosis regarding her right knee. Dr. Reid further noted, "This does not appear to be an acute injury to the medial meniscus. She has advanced degenerative changes[.]" *Id.* at 26. He administered injections, referred Ms. Keyes to physical therapy, placed her on restrictions and ordered a recheck in one month.

Approximately two weeks later, Dr. Reid replied to a letter from the carrier seeking his opinion on causation. *Id.* at 29. The letter stated, in relevant part, "We are in receipt of your latest medical note, dated 8/22/16, In [sic] which you indicate Ms. Keyes has been diagnosed with a chronic medial meniscus tear and osteoarthritis in the left knee. Based on this, we ask that you clarify the following[.]" The letter asked two questions. The first was, "In your expert opinion, to a degree of medical certainty, Is the diagnosis of chronic medial meniscus tear related to her work injury of 7/6/16 by greater than 51%?" Dr. Reid wrote, "No." The second question was, "Did the diagnosed injury result from any other contributing health conditions and if yes, what other contributing health conditions?" Dr. Reid responded, "Osteoarthritis Left Knee."

As a result of this causation letter, Bridgestone denied Ms. Keyes' claim. Shortly afterward, Dr. Reid wrote a letter stating, "This is to certify that Jacci Keyes has been under my care for the following condition: left knee pain and is able to return to work on 09/16/2016. Limitations: no restrictions." *Id.* at 30. It is unknown whether Dr. Reid re-examined Ms. Keyes before drafting the letter.

Ms. Keyes testified that before the July 6 incident she had no problems with her knees despite working on her feet all day for twelve-hour shifts. She returned to work in September, and her supervisor assigned a "helper" to assist her. Ultimately, the pain in both knees became too severe for her to continue working; Ms. Keyes left in late October. She submitted no additional medical evidence related to treatment of her knees or offering an opinion on the cause of her injury.

### Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Ms. Keyes, as the injured employee, has the burden of proof on the essential elements of her claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits in order to meet her burden. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

In addition to applying these general legal principles to the facts of this case, the Court must consider the specific legal issue this case presents, namely, whether Ms. Keyes suffered an injury as defined in the Workers' Compensation Law. An "injury" means an "injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . disablement or the need for medical treatment[.]" Tenn. Code Ann. § 50-6-102(14) (2016). An injury does not include "the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment[.]" *Id.* at § 50-6-102(14)(A). In addition, an injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." *Id.* at § 50-6-102(14)(B). Moreover, this must be shown "to a reasonable degree of medical certainty." *Id.* at § 50-6-102(14)(C).

Here, it is undisputed that, on July 6, 2016, Ms. Keyes slipped in water on the floor at work while performing her job duties, resulting in pain in her left knee and the need for treatment. In response, while Bridgestone promptly offered a panel and treatment at its onsite clinic with nursing staff, it did not afford Ms. Keyes the opportunity to see the actual physician of her choosing from the panel for almost three

3

weeks. Upon reviewing subsequent MRI results, Dr. Tippens referred her to an orthopedist. He sent the referral specialist copies of her records with a cover letter pointing out Ms. Keyes' "chronic mild to severe OA" and cartilage loss.

Dr. Reid saw Ms. Keyes once and reached a similar conclusion, namely that she had a "chronic tear," suffered no acute injury to her medial meniscus, and her condition is largely degenerative. Further, although Dr. Reid placed her on restrictions and recommended a return visit, he lifted the restrictions after Bridgestone denied the claim; on this record, it is not clear whether he re-examined her before doing so. This also occurred after Dr. Reid responded to the carrier's letter asking about causation—a letter that incorrectly stated the legal standard. Specifically, it asked for his opinion "to a degree of medical certainty" rather than a "reasonable degree of medical certainty," and it states that this finding must be "by greater than 51%." Further, as counsel for Bridgestone acknowledged, the medical records for both Drs. Tippens and Reid are silent regarding the possibility of the incident aggravating a preexisting condition.

Nonetheless, the Court is unable to grant Ms. Keyes any relief at this time. Ms. Keyes selected Drs. Tippens and Reid from panels in compliance with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) and is obligated to accept the medical benefits Bridgestone provided. Section 50-6-102(14)(E) provides that the opinion of the treating physician, selected by the employee from the employer's designated panel of physicians under section 50-6-204(a)(3), "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses, *"absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." Scott, supra,* at \*8 (Emphasis added).

In this case, Ms. Keyes introduced no medical opinion that addresses a potential aggravation of her underlying condition and which is contrary to those of Drs. Tippens and Reid. Therefore, as a matter of law, Ms. Keyes has not come forward with sufficient evidence from which this Court may conclude that she is likely to prevail at a hearing on the merits that her left-knee injury arose primarily out of and in the course and scope of her employment. Her request for workers' compensation benefits is denied at this time.[1]

As a final concern, the Court notes that Bridgestone failed to file a wage statement. Tennessee Compilation Rules and Regulations 0800-2-14-.03(3) requires a wage statement to be filed with the denial. Further, any Bureau employee may refer any entity to the Penalty Unit for the assessment of a penalty whenever it appears there may

---

[1] The Court noticed medical records and a First Report of Injury regarding a later injury to Ms. Keyes' right knee. However, the PBD and DCN only list an injury date of July 6, 2016, and therefore the Court confined the analysis to that injury only. The Court's decision within this order has no effect on the compensability of Ms. Keyes' assertion of a right-knee injury on August 22, 2016, regardless of Dr. Tippens' notations within his records.

4

have been a violation of the Bureau's rules. *See* Tenn. Comp. R. & Regs. 0800-02-24-.03. The Court believes there may have been a rules violation and refers the matter to the Penalty Unit for consideration of whether a penalty assessment is warranted.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Keyes' claim against Bridgestone and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on **June 5, 2017, at 9:45 a.m. Central.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without your further participation.

3. This matter is referred to the Penalty Unit for consideration of applicable penalties regarding Bridgestone's failure to file a wage statement.

**ENTERED this the 13th day of April, 2017.**

**Judge Kenneth M. Switzer**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Ms. Keyes' Affidavit
2. Compilation Medical Records
3. First Report of Injury
4. C-42 Choice of Physician
5. Medical Waiver
6. C-42 Choice of Physician
7. Notice of Controversy
8. Denial letter

Technical record:
1. Petition for Benefit Determination
2. Employer's Position Statement
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Employer's Expedited Hearing Brief
6. Pre-Expedited Hearing Statement of Employer and Insurer

5

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 13th day of April, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jacqueline Keyes, self-represented | X | | | 3021 Wilford Pack Ct., Antioch TN 37013; jacci622@aol.com |
| Nicholas Akins, Nicholas Snider, Employer's attorneys | | | X | nakins@morganakins.com; nsnider@morganakins.com |
| Penalty Unit | | | X | WCCompliance.program@tn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov